JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, R.L., appeals the judgment of the Cuyahoga County Common Pleas Court that committed him to the Ohio Department of Youth Services ("ODYS") for a minimum of eighteen months.
 {¶ 2} The record reflects that three separate complaints were filed against R.L. In Case Number DL 0310979, the complaint alleged that R.L. was a delinquent child by reason of having committed an act constituting trafficking in marijuana, in violation of R.C. 2925.03(A) (C)(3), a fifth degree felony if committed by an adult.
 {¶ 3} In Case Number DL 04100105, it was alleged that R.L. was a delinquent child by reason of having committed acts constituting (1) two counts of aggravated trafficking in drugs, in violation of R.C.2925.03(A)(2) (C)(1), fourth degree felonies if committed by an adult; (2) two counts of aggravated possession of drugs, fifth degree felonies if committed by an adult; (3) trafficking in marijuana, in violation of R.C. 2925.03(A)(2), a fifth degree felony if committed by an adult; and (4) possession of marijuana, in violation of R.C. 2925.11, a minor misdemeanor if committed by an adult.
 {¶ 4} In Case Number DL 0401326, the complaint alleged that R.L. was a delinquent child by reason of having committed an act constituting tampering with evidence, in violation of R.C. 2921.12, a third degree felony if committed by an adult.
 {¶ 5} At the adjudicatory hearing that followed, the state amended the charges contained in Case Number DL 04100105 from aggravated trafficking in drugs and aggravated possession of drugs to trafficking in counterfeit controlled substances, with forfeiture, and possession of counterfeit controlled substances, with forfeiture, respectively. R.L. admitted to the charges, as amended, and admitted to the remaining charges contained in this case as well as the two other cases. After accepting R.L.'s admission, the court found R.L. to be a delinquent child. The case immediately proceeded to disposition, at which time the trial court committed R.L. to ODYS for a minimum of six months on each case, to be served consecutive to one another.
 {¶ 6} R.L. is now before this court and asserts two assignments of error for our review.
 I. {¶ 7} In his first assignment of error, R.L. argues that R.C. 2152.17(F) violates his right to equal protection under the United States and Ohio Constitutions because the statute does not require the juvenile court to make any findings before sentencing a juvenile offender to consecutive terms of commitment.
 {¶ 8} Initially, we note that a statute is presumed to be constitutional unless shown beyond a reasonable doubt that it violates a constitutional provision. Fabrey v. McDonald Police Dept. (1994),70 Ohio St.3d 351, 352, citing State ex rel. Dickman v. Defenbacher
(1955), 164 Ohio St. 142, paragraph one of the syllabus. TheFourteenth Amendment to the United States Constitution requires a state to afford "to any person within its jurisdiction the equal protection of the laws."
 {¶ 9} "`Equal protection of the law means the protection of equal laws. It does not preclude class legislation or class action provided there is a reasonable basis for such classification. The prohibition against the denial of equal protection of the laws requires that the law shall have an equality of operation on persons according to their relation. So long as the laws are applicable to all persons under like circumstances and do not subject individuals to an arbitrary exercise of power and operate alike upon all persons similarly situated, it suffices the constitutional prohibition against the denial of equal protection of the laws.'" Conley v. Shearer (1992), 64 Ohio St.3d 284, 288-289, quotingDayton v. Keys (1969), 21 Ohio Misc. 105, 114.
 {¶ 10} Section 2, Article I of the Ohio Constitution provides "essentially identical" protection. Park Corp. v. Brookpark,102 Ohio St.3d 166, 2004-Ohio-2237, at ¶ 18, quoting Kinney v. KaiserAluminum Chem. Corp. (1975), 41 Ohio St.2d 120, 123. Thus, the standard for determining whether a statute or ordinance violates equal protection is essentially the same under the state and federal Constitutions. Id., citing State v. Thompkins (1996), 75 Ohio St.3d 558,561.
 {¶ 11} In this case, R.L. argues that juvenile offenders are treated differently from adult offenders under R.C. 2152.17(F) because there is no requirement for a juvenile trial judge to support the decision to impose consecutive sentences with any specific findings as is required for adult offenders under R.C. 2929.14(E)(4) and 2929.19.(B).
 {¶ 12} R.C. 2152.17(F) provides, in relevant part:
 {¶ 13} "If a child is adjudicated a delinquent child for committing two or more acts that would be felonies if committed by an adult and if the court entering the delinquent child adjudication orders the commitment of the child for two or more of those acts to the legal custody of the department of youth services for institutionalization * * *, the court may order that all of the periods of commitment imposed under those sections for those acts be served consecutively in the legal custody of the department of youth services * * *."
 {¶ 14} As to adult offenders, a trial judge must comply with R.C.2929.14(E) and 2929.19(B) before imposing consecutive sentences. R.C.2929.14(E), in particular, mandates that, before imposing consecutive terms of imprisonment, the trial court undertake a tripartite analysis, which includes making certain findings on the record as required by R.C.2929.19(B)(2) — a requirement that is not necessary when entering orders of commitment for juvenile offenders under R.C. 2152.17(F). As such, as a class of offenders, juvenile offenders are treated differently from adult offenders for purposes of confinement.
 {¶ 15} In determining whether this disparity in treatment passes constitutional muster, we must first determine whether "`a fundamental interest or suspect class is involved.'" State v. Peoples,102 Ohio St.3d 460, 2004-Ohio-3923, at ¶ 7, quoting Conley v. Shearer,64 Ohio St.3d at 289. R.L. does not argue that a fundamental interest is at stake or that he is a member of a suspect class. He, nonetheless, argues that there is no compelling governmental interest to impose consecutive terms of commitment. This level of scrutiny, however, is generally employed when a fundamental interest or a suspect class is involved. See Klein v. Leis, 99 Ohio St.3d 537, 2003-Ohio-4779, at ¶ 22, citing State v. Thompson, 95 Ohio St.3d 264, 2002-Ohio-2124, at ¶ 13.
 {¶ 16} The state maintains that R.L. has not been denied equal protection under the law. Relying on In re Vaughn (Aug. 13, 1990), 12th Dist. No. CA89-11-162, 1990 Ohio App. Lexis 3456, the state asserts that it has the right to establish and maintain a separate system of legal authority over juveniles. The Vaughn court, relying on In re Gault
(1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, recognized that the United States and Ohio Constitutions do not "`mandate elimination of all difference in the treatment of juveniles.'" Id. at 30. As such, "juveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny." Id. Other courts, likewise, have concluded that youth does not constitute a suspect class and, therefore, subject to strict scrutiny for equal protection analysis purposes. See Ramos v. Town of Vernon (C.A.2, 2003), 353 F.3d 171, 181; B.S. v. State (Fla.App. 2003), 862 So.2d 15,18; In re C.H. (1984), 210 Mont. 184, 198, 683 P.2d 931, 938.
 {¶ 17} As such, we will analyze R.L.'s equal protection challenge under a "rational basis" level of scrutiny. Granzow v. Montgomery Cty.Bur. of Support (1990), 54 Ohio St.3d 35, 37; Gaines v.Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 58; see, also, Rosemanv. Firemen Policemen's Death Benefit Fund (1993), 66 Ohio St.3d 443,447. Under rational-basis scrutiny, a statute will be held constitutional "if it bears a rational relationship to a legitimate governmental interest." Id. The classification will not violate the Equal Protection Clause if it bears a rational relationship to a legitimate governmental interest. Menefee v. Queen City Metro (1990), 49 Ohio St.3d 27, 29.
 {¶ 18} Under this level of scrutiny, we conclude that there exists a rational basis for treating juvenile offenders differently than adult offenders. The objectives of the juvenile justice system differ from those of the adult criminal justice system. For adult offenders, the state's primary objective is to deter further criminal conduct and to punish the offender. R.C. 2929.11(A) provides:
 {¶ 19} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender."
 {¶ 20} On the other hand, for the juvenile offender, the state's objectives focus on protection, development and rehabilitation. In this regard, R.C. 2152.01(A) provides:
 {¶ 21} "The overriding purposes for dispositions under this chapter [R.C. Chapter 2152] are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."
 {¶ 22} R.L. argues that the purposes of felony sentencing between the two groups of offenders have become less distinct since R.C. 2152.01(A) was amended effective January 1, 2002. Specifically, he argues that the focus of the juvenile justice system has veered from one of protection and rehabilitation of the offender to one of protecting the public and holding the juvenile offender accountable for his or her actions. Moreover, he argues that R.C. 2152.01(B) contains the same consistency-in-sentencing mandate set forth in R.C. 2929.11(B), which further demonstrates, in his opinion, that the legislature intended that juvenile and adult offenders be treated similarly for sentencing purposes.
 {¶ 23} We are unpersuaded. Although we may agree with R.L. to the extent that the purposes of juvenile sentencing may have experienced somewhat of a shift from earlier legislation in that there are elements of responsibility and accountability included, the primary focus remains on the development of the child. Indeed, this has been the focus from the inception of the juvenile justice system. In In re Gault, 387 U.S. 1,87 S.Ct. 1428, 18 L.Ed.2d 527, the United States Supreme Court discussed the history of the juvenile justice system, stating:
 {¶ 24} "The early reformers were appalled by adult procedures and penalties, and by the fact that children could be given long prison sentences and mixed in jails with hardened criminals. They were profoundly convinced that society's duty to the child could not be confined by the concept of justice alone. They believed that society's role was not to ascertain whether the child was `guilty' or `innocent,' but `What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career.' The child-essentially good, as they saw it — was to be made `to feel that he is the object of [the state's] care and solicitude,' not that he was under arrest or on trial. The rules of criminal procedure were therefore altogether inapplicable. The apparent rigidities, technicalities, and harshness which they observed in both substantive and procedural criminal law were therefore to be discarded. The idea of crime and punishment was to be abandoned. The child was to be `treated' and `rehabilitated' and the procedures, from apprehension through institutionalization, were to be `clinical' rather than punitive." (Citations omitted.) Id. at 16.
 {¶ 25} The distinction between treatment of juvenile and adult offenders, therefore, is a hard-fought and well-deserved distinction. We see no reason to supplant that distinction, for purposes of felony confinement, with one that would diminish the value society places on the development of youth. Consequently, we conclude that there exists a rational basis for imposing consecutive terms of commitment under R.C.2152.17(F) and, therefore, this statute is not constitutionally infirm under either the Equal Protection Clause of the United States Constitution or the similar guarantee in the Ohio Constitution. Accord Inre Slater, 9th Dist. Nos. 04CA0004 04CA0005, 2004-Ohio-4961.
 {¶ 26} R.L.'s first assignment of error is not well taken and is overruled.
 II. {¶ 27} In his second assignment of error, R.L. contends that his trial counsel was ineffective for failing to challenge the imposition of consecutive terms of commitment as an improper commitment. Because we found that commitment not to be improper under R.L.'s first assignment of error, the failure of R.L.'s trial counsel in challenging the commitment cannot be said to constitute ineffective assistance of counsel.
 {¶ 28} R.L.'s second assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr, P.J., and Karpinski, J., concur
(*Sitting by Assignment: Judge Joyce J. George, Retired, of the Ninth District Court of Appeals.)