**In re CHAPPELL.**

[Cite as *In re Chappell,* 164 Ohio App.3d 628, 2005-Ohio-6451.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 225.

Decided Nov. 29, 2005.

630

Paul J. Gains, Mahoning County Prosecuting Attorney, and Gina Buccino Arnaut, Assistant Prosecuting Attorney, for appellee, state of Ohio.

David H. Bodiker, Ohio Public Defender, Amanda J. Powell, Assistant State Public Defender, Office of the Ohio Public Defender, for appellant, Ronald Chappell.

WAITE, Judge.

{¶ 1} Appellant, Ronald Chappell, appeals the dispositional order in his juvenile delinquency case, in which the Mahoning County Court of Common Pleas, Juvenile Division, imposed consecutive terms of commitment to the Ohio Department of Youth Services. The trial court imposed consecutive six-month terms of commitment after appellant was adjudicated delinquent for committing two

counts of assault. Appellant argues that Ohio's juvenile code violates the state and federal constitutional Equal Protection Clauses because juveniles are not afforded the same rights and benefits as adult criminals with respect to consecutive sentences. Appellant contends that the criminal-sentencing statutes for adults require the trial court to make certain findings and give reasons for imposing consecutive sentences, whereas the juvenile code does not. Abundant prior caselaw has considered and rejected appellant's argument that juveniles are a protected class in the context of equal-protection analysis. There has been no equal-protection violation in this case, and the judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 30, 2002, appellant was arrested for assaulting two Youngstown Police officers. Appellant was 16 years old at the time. The state of Ohio, appellee, filed five counts of delinquency against appellant, including two counts of violating R.C. 2903.13, fourth-degree felony assault, under case No. 02 JA 1851. On May 13, 2003, appellant entered a plea of admission on all counts and was adjudicated delinquent on all five counts. Appellant also entered a plea of admission to parole violations in case Nos. 02 JA 155 and 99 JA 545.

{¶ 3} On May 28, 2003, the Mahoning County Court of Common Pleas, Juvenile Division, filed its dispositional judgment entry. The court committed appellant to the Ohio Department of Youth Services for a minimum of six months on each of the two assault counts, to run consecutively, but the penalty was held in abeyance. Appellant was given 90 days detention for the parole violations, after which he was to be placed on parole.

{¶ 4} Appellant violated the terms of his parole, and another parole-revocation hearing was held on August 5, 2004. On August 31, 2004, the court determined, inter alia, that appellant was delinquent for engaging in public indecency in violation of R.C. 2907.09, and that the delinquency adjudication constituted a parole violation. As part of the disposition of the case, the court imposed the penalties that were held in abeyance in case No. 02 JA 1851, which consisted of two periods of commitment, for six months each, to the Ohio Department of Youth Services, to run consecutively.

{¶ 5} On September 30, 2004, appellant filed an appeal of that part of the August 31, 2004 judgment entry that reimposed the penalty in case No. 02 JA 1851, namely, the consecutive terms of commitment to the Ohio Department of Youth Services.

ASSIGNMENT OF ERROR

{¶ 6} "R.C. 2152.17(F) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution because it does not require the juvenile court to make any findings before it imposes a consecutive sentence for a felony offense in a juvenile delinquency proceeding."

{¶ 7} This appeal asserts that Ohio's juvenile statutes violate the Equal Protection Clauses of the federal and state constitutions because juveniles are not given the same procedural protections as adults with respect to consecutive sentences.

{¶ 8} The federal Equal Protection Clause is found in the Fourteenth Amendment, which states:

{¶ 9} "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

{¶ 10} The state Equal Protection Clause is found in Section 2, Article I of the Ohio Constitution:

{¶ 11} "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *."

{¶ 12} The limits placed upon government action by the Equal Protection Clauses of the United States Constitution and Ohio Constitution are "essentially identical." *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 491, 21 O.O.3d 302, 424 N.E.2d 586.

{¶ 13} "The Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis." *State v. Williams* (2000), 88 Ohio St.3d 513, 530, 728 N.E.2d 342, citing *Harper v. Virginia State Bd. of Elections* (1966), 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (Harlan, J., dissenting). The Equal Protection Clause does not forbid classifications. Rather, it prevents the state " 'from treating differently persons who are in all relevant respects alike.' " *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 19, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1.

{¶ 14} " 'Equal protection of the law means the protection of equal laws. It does not preclude class legislation or class action provided there is a reasonable basis for such classification. The prohibition against the denial of equal protection of the laws requires that the law shall have an equality of operation on persons according to their relation. So long as the laws are applicable to all

persons under like circumstances and do not subject individuals to an arbitrary exercise of power and operate alike upon all persons similarly situated, it suffices the constitutional prohibition against the denial of equal protection of the laws.' " *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 288–289, 595 N.E.2d 862, quoting *Dayton v. Keys* (1969), 21 Ohio Misc. 105, 114, 50 O.O.2d 29, 252 N.E.2d 655.

{¶ 15} As an initial observation, there is a rebuttable presumption that a statute is constitutional until it is shown beyond a reasonable doubt that it is in violation of a constitutional provision. *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31.

{¶ 16} Appellant's first assertion, and one that is not contradicted by appellee, is that juveniles and adults are treated differently when a court imposes consecutive terms of incarceration or commitment. In order for an adult to be given consecutive prison terms, the court must comply with R.C. 2929.14(E)(4), which states:

{¶ 17} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, *the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct* and to the danger the offender poses to the public, *and if the court also finds any of the following:*

{¶ 18} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 19} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 20} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." (Emphasis added.)

{¶ 21} In light of the requirements of R.C. 2929.14(E)(4), a trial court cannot simply impose consecutive sentences on an adult, but must first make a series of findings to support consecutive sentences. Furthermore, the court must give reasons in support of those findings. R.C. 2929.19(B)(2)(c).

{¶ 22} In contrast, when a juvenile is found to be delinquent for violating a statute that would have been a felony had it been committed by an adult, the court may impose consecutive terms of detention without making specific findings. Pursuant to R.C. 2152.17(F):

{¶ 23} "If a child is adjudicated a delinquent child for committing two or more acts that would be felonies if committed by an adult and if the court entering the delinquent child adjudication orders the commitment of the child for two or more of those acts to the legal custody of the department of youth services for institutionalization in a secure facility pursuant to section 2152.13 or 2152.16 of the Revised Code, *the court may order that all of the periods of commitment imposed under those sections for those acts be served consecutively in the legal custody of the department of youth services,* provided that those periods of commitment shall be in addition to and commence immediately following the expiration of a period of commitment that the court imposes pursuant to division (A), (B), (C), or (D)(1) of this section. A court shall not commit a delinquent child to the legal custody of the department of youth services under this division for a period that exceeds the child's attainment of twenty-one years of age." (Emphasis added.)

{¶ 24} According to appellant, an entire class of offenders, namely, juvenile offenders, is denied the benefit of the procedural protections offered by R.C. 2929.14(E)(4) and 2929.19(B)(2)(c). Assuming, arguendo, that consecutive prison terms are the equivalent of consecutive terms of commitment with the Ohio Department of Youth Services, and assuming that the juvenile statutes do not otherwise contain the equivalent procedural protections found in R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), we now assess the main thrust of appellant's argument. Appellant contends that this disparate treatment of adults and juveniles must be reviewed under a strict-scrutiny standard of review, and that a strict-scrutiny review would reveal that the disparate treatment of juvenile offenders is unconstitutional.

{¶ 25} Under a strict-scrutiny analysis, "a discriminatory classification [must] be narrowly tailored to serve a compelling state interest." *State v. Thompson,* 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 13. Appellant argues that there is no compelling governmental reason for treating adults and juveniles differently when imposing consecutive terms of incarceration or commitment.

{¶ 26} Appellant further argues that under the changes made to the juvenile statutes in 2002, the stated legislative purposes of felony sentencing for adults and juvenile-delinquency dispositional rulings are essentially identical. The stated purposes of felony sentencing for adults are found in R.C. 2929.11(A):

{¶ 27} "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶ 28} "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

{¶ 29} "(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender."

{¶ 30} The stated purposes of juvenile dispositions are found in R.C. 2152.01, effective January 1, 2002:

{¶ 31} "(A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services.

{¶ 32} "(B) Dispositions under this chapter shall be reasonably calculated to achieve the overriding purposes set forth in this section, commensurate with and not demeaning to the seriousness of the delinquent child's or the juvenile traffic offender's conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children and juvenile traffic offenders. The court shall not base the disposition on the race, ethnic background, gender, or religion of the delinquent child or juvenile traffic offender."

{¶ 33} Prior to January 1, 2002, one of the stated purposes of the juvenile justice system was "[t]o protect the public interest in removing * * * the taint of criminality from children committing delinquent acts." Former R.C. 2151.01(B). 1969 Am.Sub.H.B. No. 320, 133 Ohio Laws, Part II, 2041. According to appellant, the purposes of Ohio's juvenile justice system changed on January 1, 2002, and now are nearly identical to those of the criminal justice system. Under the new statutory scheme, the juvenile courts are no longer required to be concerned with removing the taint of criminality from the acts of a juvenile delinquent.

Thus, argues appellant, there is less reason today to distinguish between adult and juvenile offenders than there was prior to January 1, 2002.

{¶ 34} In rebuttal, appellee correctly points out that a strict-scrutiny standard of review is only appropriate when a fundamental interest is at stake or when the person is a member of a suspect class:

{¶ 35} "The test used in determining whether a statute is constitutional under the Equal Protection Clause depends upon whether a fundamental interest or suspect class is involved. 'Under the equal protection clause, in the absence of state action impinging on a fundamental interest or involving a suspect class, a rational basis analysis is normally used. Where the traditional rational basis test is used great deference is paid to the state, the only requirement being to show that the differential treatment is rationally related to some legitimate state interest.' *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 11, 15 O.O.3d 3, 6, 399 N.E.2d 66, 69." *Conley v. Shearer*, 64 Ohio St.3d 284, 289, 595 N.E.2d 862.

{¶ 36} If a class of persons does not qualify as a suspect class, the basis for the classification will only be set aside if it is "based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify" the classification. *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508.

{¶ 37} Appellant's argument is based on the theory that juveniles are a suspect class. A "suspect class" is defined as "one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " *Massachusetts Bd. of Retirement v. Murgia* (1976), 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520, quoting *San Antonio Indep. School Dist. v. Rodriguez* (1973), 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16. Appellee contends that Ohio courts have consistently concluded that juveniles do not constitute a suspect class in the context of equal-protection law. Appellee's argument is correct. For example, in the case of *In re R.L.,* 8th Dist. Nos. 84543, 84545, and 84546, 2005-Ohio-26, 2005 WL 23323, the Eighth District Court of Appeals examined precisely the same issue that appellant is raising in this appeal and held:

{¶ 38} " '[J]uveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny.' [*In re Vaughn* (Aug. 13, 1990), 12th Dist. No. CA89–11–162, 1990 WL 116936.] Other courts, likewise, have concluded that youth does not constitute a suspect class and, therefore, subject to strict scrutiny for equal protection analysis purposes. See *Ramos v. Town of Vernon* (C.A.2, 2003), 353 F.3d 171, 181; *B.S. v. State*

(Fla.App.2003), 862 So.2d 15, 18; *In re C.H.* (1984), 210 Mont. 184, 198, 683 P.2d 931, 938.

{¶ 39} "As such, we will analyze R.L.'s equal protection challenge under a 'rational basis' level of scrutiny. * * * *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 447, 613 N.E.2d 574. Under rational-basis scrutiny, a statute will be held constitutional 'if it bears a rational relationship to a legitimate governmental interest.' Id. The classification will not violate the Equal Protection Clause if it bears a rational relationship to a legitimate governmental interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181." *In re R.L.*, 2005-Ohio-26, ¶ 16–17.

{¶ 40} *In re R.L.* determined that "[t]he objectives of the juvenile justice system differ from those of the adult criminal justice system." Id. at ¶ 18. The objectives of the criminal justice system are to punish the offender and to deter future crime. R.C. 2929.11(A). *In re R.L.* considered whether the objectives of the juvenile justice system had shifted primarily toward punishment and deterrence after the statutory changes were made in January 1, 2002. The Eighth District held as follows:

{¶ 41} "Although we may agree with R.L. to the extent that the purposes of juvenile sentencing may have experienced somewhat of a shift from earlier legislation in that there are elements of responsibility and accountability included, the primary focus remains on the development of the child. Indeed, this has been the focus from the inception of the juvenile justice system." Id. at ¶ 23.

{¶ 42} The Ninth District Court of Appeals has also looked at this issue and has come to the same conclusion, namely, that the differences between the manner in which consecutive penalties are imposed in the adult and juvenile systems do not trigger a strict-scrutiny analysis and satisfies the rational-basis test. *In re Slater,* 9th Dist. Nos. 04CA0004 and 04CA0005, 2004-Ohio-4961, 2004 WL 2244249.

{¶ 43} Many other courts have compared Ohio's criminal justice and juvenile justice systems and have concluded time and again that there are legitimate differences and purposes between the two systems, that the differences are not subject to strict-scrutiny analysis in the face of an equal-protection challenge, and that the government has a rational basis for making distinctions between the two systems. See, e.g., *In re Estes,* 4th Dist. No. 04CA11, 2004-Ohio-5163, 2004 WL 2260510 (difference in procedure dealing with probation violations does not trigger strict-scrutiny analysis); *In re Walker,* 10th Dist. No. 02AP–421, 2003-Ohio-2137, 2003 WL 1962419 (also dealing with probation); *In re Cundiff* (Jan. 13, 2000), 10th Dist. No. 99AP–364, 2000 WL 28845 (failure to provide right to jury trial in juvenile cases is not reviewed under strict-scrutiny analysis).

{¶ 44} Other caselaw approaches this topic somewhat differently and has held that juveniles who are adjudicated as delinquent cannot be compared to adult criminal defendants, because the two groups are not similarly situated. An equal-protection violation can occur only when the laws operate differently for people who are similarly situated. *Conley,* supra, 64 Ohio St.3d at 289, 595 N.E.2d 862. Juveniles, though, are not similarly situated to adults, because juveniles are not charged as criminal defendants; rather, they are cited under the civil, juvenile-delinquency statutes. "Evidence that the minor committed acts that would constitute a crime if committed by an adult is used only for the purpose of establishing that the minor is delinquent, not to convict him of a crime and to subject him to punishment for that crime." *State v. Weeks* (1987), 37 Ohio App.3d 65, 67, 523 N.E.2d 532. Under this reasoning, a juvenile may be similarly situated only to other juveniles. *In re Gillespie,* 150 Ohio App.3d 502, 2002-Ohio-7025, 782 N.E.2d 140, ¶ 24.

{¶ 45} Appellant acknowledges that the constitutional rights of children are not always identical to those afforded to adults. Nevertheless, appellant argues that juvenile detention is a deprivation of liberty and a "child's right is virtually coextensive with that of an adult" with respect to deprivations of liberty. *Bellotti v. Baird* (1979), 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797. Thus, appellant contends that a juvenile should have the very same rights as adults when consecutive sentences are imposed.

{¶ 46} Appellant cites the *Bellotti* case out of context. It is clear that *Bellotti* allows for distinctions to be made between adults and juveniles in the context of incarceration and detention:

{¶ 47} "The Court's concern for the vulnerability of children is demonstrated in its decisions dealing with minors' claims to constitutional protection against deprivations of liberty or property interests by the State. With respect to many of these claims, we have concluded that the child's right is virtually coextensive with that of an adult. For example, the Court has held that the Fourteenth Amendment's guarantee against the deprivation of liberty without due process of law is applicable to children in juvenile delinquency proceedings. *In re Gault,* [ (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527]. In particular, minors involved in such proceedings are entitled to adequate notice, the assistance of counsel, and the opportunity to confront their accusers. They can be found guilty only upon proof beyond a reasonable doubt, and they may assert the privilege against compulsory self-incrimination. *In re Winship,* 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] (1970); *In re Gault,* supra. See also *Ingraham v. Wright,* 430 U.S. 651, 674 [97 S.Ct. 1401, 51 L.Ed.2d 711] (1977) (corporal punishment of schoolchildren implicates constitutionally protected liberty interest); cf. *Breed v. Jones,* 421 U.S. 519 [95 S.Ct. 1779, 44 L.Ed.2d 346] (1975)

(Double Jeopardy Clause prohibits prosecuting juvenile as an adult after an adjudicatory finding in juvenile court that he had violated a criminal statute). Similarly, in *Goss v. Lopez*, 419 U.S. 565 [95 S.Ct. 729, 42 L.Ed.2d 725] (1975), the Court held that children may not be deprived of certain property interests without due process.

{¶ 48} *"These rulings have not been made on the uncritical assumption that the constitutional rights of children are indistinguishable from those of adults. Indeed, our acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults.* In order to preserve this separate avenue for dealing with minors, the Court has said that hearings in juvenile delinquency cases need not necessarily ' "conform with all of the requirements of a criminal trial or even of the usual administrative hearing." ' *In re Gault*, supra, at 30 [87 S.Ct. 1428, 18 L.Ed.2d 527], quoting *Kent v. United States*, 383 U.S. 541, 562 [86 S.Ct. 1045, 16 L.Ed.2d 84] (1966). Thus, juveniles are not constitutionally entitled to trial by jury in delinquency adjudications. *McKeiver v. Pennsylvania*, 403 U.S. 528 [91 S.Ct. 1976, 29 L.Ed.2d 647] (1971). Viewed together, our cases show that although children generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for 'concern, * * * sympathy, and * * * paternal attention.' Id., at 550 [91 S.Ct. 1976, 29 L.Ed.2d 647] (plurality opinion)." (Emphasis added.) *Bellotti*, supra, 443 U.S. at 634–635, 99 S.Ct. 3035, 61 L.Ed.2d 797.

{¶ 49} The arguments raised by appellant in this appeal have been raised many times before without success. Although appellant has focused on the seemingly unfair and disparate treatment of one specific aspect as to the manner in which the courts impose punishments upon adults and juveniles, taken as a whole, the adult and juvenile justice systems are so different that it is difficult, if not impossible, to isolate the relative importance of a single procedural difference dealing with consecutive punishments. Furthermore, the consecutive punishments being imposed on adults and juveniles cannot easily be compared. Adults are sent to prison, possibly for their entire lives, while juveniles are detained by the Ohio Department of Youth Services, at most, until they turn 21. We also cannot ignore the fact that the revisions in the juvenile code which took effect in 2002 did not dramatically alter the basic purposes of juvenile dispositions. R.C. 2152.01(A) states very clearly that one of the purposes of juvenile dispositions is "to provide for the care, protection, and mental and physical development of children." There is no corresponding provision in the adult criminal statutes. The juvenile disposition statutes do not exist merely to punish children and prevent future crime, as argued by appellant. The juvenile code and the adult

criminal code serve different purposes, and the caselaw in this area has taken into account those differences. Appellant has not presented any persuasive new arguments to add to the established caselaw on this topic, and his assignment of error is hereby overruled. The judgment of the Mahoning County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

VUKOVICH and DEGENARO, JJ., concur.