**[Cite as *In re I.A.*, 2012-Ohio-4973.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

IN RE:                  :

                          :        Appellate Case No. 25078

           I. A.             :

                          :        Juvenile Court No.   2011-9975

                          :

                          :        (Juvenile Appeal from

                          :         Common Pleas Court)

                          :

                          :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 26th day of October, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Appellee

SHERYL A. TRZASKA, Atty. Reg. #0079915, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
       Attorney for Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    "John"[1] was adjudicated a delinquent juvenile for committing rape in 2011 when he was 14 years old.[2] At the disposition hearing,[3] the juvenile court committed John to the Department of Youth Services's legal custody for at least one year and potentially until he turns 21 years old. The court ordered that he be placed in a secure facility. Also at the hearing, the court classified John as a juvenile-offender registrant and ordered him to comply with the sex-offender registration and notification requirements in R.C. Chapter 2950. The court did not impose the chapter's victim- or community-notification provisions. Finally, the court determined that John is a Tier III sex offender/child-victim offender.

{¶ 2}    John appeals the juvenile court's application of R.C. Chapter 2950 to him. In the first of two assignments of error, John contends that the application violates R.C. 2151.01 and 2152.01 and the Due Process Clauses of the Ohio and United States Constitutions. In the second assignment of error, he contends that classifying him as a juvenile-offender registrant before his release from the secure facility violates R.C. 2152.83.

## I. Applying R.C. Chapter 2950 to Juveniles

{¶ 3}    John contends that applying R.C. Chapter 2950 to juveniles violates R.C. 2151.01(B), 2152.01(A) and (B), and due process. The state does not argue the merits of this contention. Instead, it contends that John waived appellate review of this issue because he did not raise it in the juvenile court. Although John, in his reply brief, tacitly admits that he did

---

[1] To enhance readability, we refer to the appellant, I.A., by this pseudonym.

[2] The complaint alleges that John's act violated R.C. 2907.02(A)(1)(b), engaging in sexual conduct with a person less than 13 years of age. The act would be a first-degree felony if committed by an adult. John admitted to the complaint's allegations.

[3] The complaint was filed in Clark County Juvenile Court, and that court adjudicated him delinquent. The case was then transferred to Montgomery County Juvenile Court for disposition because Montgomery was John's home county.

not raise this issue, he urges us to exercise our discretion and consider the issue nevertheless.

{¶ 4} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, "[t]he waiver doctrine * * * is discretionary." *In re M.D.*, 38 Ohio St. 3d 149, 527 N.E.2d 286 (1988), syllabus. Even in a case of clear waiver, an appellate court may "consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*; *see In re J.F.*, 178 Ohio App.3d 702, 2008-Ohio-4325, 900 N.E.2d 204, ¶ 84 (2d Dist.) (saying that "parties may raise plain error on appeal, even where objections were not filed in juvenile court"). Courts will consider unraised issues when doing so "best serve[s]" "the interests of justice." *In re A.R.R.*, 4th Dist. Ross No. 09CA3105, 2009-Ohio-7067, ¶ 4. Since John is a juvenile, and because this issue is applicable throughout juvenile sex offenses, we think that the interests of justice are best served by considering whether R.C. Chapter 2950 may be applied to him.

{¶ 5} John argues that R.C. Chapter 2950 may not be applied to a juvenile because the law is punitive[4] and a juvenile may not be criminally punished. The statutes that John cites concern the purposes and goals of Ohio's juvenile system. R.C. 2151.01(B) pertinently provides that the section should be "liberally interpreted and construed so as to * * * provide judicial procedures through which Chapters 2151. and 2152. of the Revised Code are executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional

---

[4]The Ohio Supreme Court in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, considered whether R.C. Chapter 2950 is remedial or punitive for purposes of determining whether the law is retroactive. The Court concluded that "[f]ollowing the enactment of S.B. 10 * * * R.C. Chapter 2950 is punitive."

and other legal rights are recognized and enforced." And R.C. 2152.01 pertinently provides:

> (A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services.

> (B) Dispositions under this chapter shall be *reasonably calculated to achieve the overriding purposes* set forth in this section, commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct.

(Emphasis added.) Punishment, John points out, is not one of the statutory purposes or goals, but this does not mean that sex offender registration requirements may not be imposed. The Ohio Supreme Court has said that "[p]unishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation." *In re Caldwell*, 76 Ohio St.3d 156, 157, 666 N.E.2d 1367 (1996). Placing a juvenile in a secure facility for several years is undoubtedly punishment. But courts may order juvenile detention to achieve the goals of public protection and juvenile rehabilitation. Similarly, while imposing R.C. Chapter 2950's registration and notification requirements may be punishment, doing so may help achieve these same goals, as the juvenile court in this case explained:

> [I]t gives the youth motivation to understand that if they've been classified * * * if you do better through your treatment, you can have it reduced or I can declassify you.

> Many psychologists have determined that that motivation is a good motivation to give a youth that can successfully help that youth complete sex offender treatment.

(Disposition Tr. 15).

{¶ 6} It is not clear from John's argument how or why applying R.C. Chapter 2950 to juveniles violates due process. Nor does the argument clearly say whether the due-process violation is procedural or substantive. Since the argument does not mention the way in which the juvenile court here went about applying R.C. Chapter 2950, we understand the alleged violation to be one of substantive due process. The Eleventh District has rejected such an argument and held that applying R.C. Chapter 2950 to juveniles is constitutional. *In re Goodman*, 161 Ohio App. 3d 192, 2005-Ohio-2364, 829 N.E.2d 1219, ¶ 20 (11th Dist.). The court said that juveniles are not a suspect class and that R.C. Chapter 2950 implicates no fundamental constitutional right. *Id*. at ¶ 19, citing *In re R.L.*, 8th Dist. Cuyahoga Nos. 84543, 84545, 84546, 2005-Ohio-26, ¶ 16 (saying that "'juveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny,'" quoting *In re Vaughn*, 12th Dist. Butler No. CA89-11-162, 1990 WL 116936, *5 (Aug. 13, 1990)). Scrutinizing the law using the rational-basis test, the Eleventh District concluded that "the General Assembly's legitimate interest of protecting the public from sexual offenders, regardless of age, bears a rational relationship to the registration requirements of R.C. Chapter 2950 as it applies to juveniles." *Id*. at ¶ 20. We agree with the Eleventh District's reasoning and conclusion.[5]

---

[5] The Ohio Supreme Court held in *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, that R.C. 2152.86 violates

{¶ 7}    The first assignment of error is overruled.

## II. The Timing of Juvenile-Offender-Registrant Classification

{¶ 8}    John contends that under the division of R.C. 2152.83 that applies to him the juvenile court is permitted to impose the juvenile-offender-registrant classification only on his release from the secure facility to which the court sent him. The state contends that the division gave the court the choice to classify John either at the time of his disposition or at the time of his release.

{¶ 9}    The juvenile-offender-registrant classification procedure that a court must follow depends on the juvenile's age. Division (A) of section 2152.83 applies to a juvenile who was 16 or 17 years old at the time he committed the offense. *See* R.C. 2152.83(A)(1)(b). When division (A) applies the juvenile court "*shall* issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secure facility, *shall* issue at the time of the child's release from the secure facility an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06." (Emphasis added.) R.C. 2152.83(A)(1). Division (B) applies when the juvenile was 14 or 15 at the time he committed the offense. *See* R.C.

procedural due process because it automatically imposes lifelong registration and notification requirements on a certain class of juvenile sex offenders called public-registry-qualified juvenile-offender registrants. *In re C.P.* at ¶ 86. The Court found that "PRQJORs are subject to more stringent registration and notification requirements than other juvenile-offender registrants." *Id.* at ¶ 12. And "[s]uch requirements are imposed upon [these] juveniles without the participation of a juvenile judge." *Id.* at ¶ 86. In particular, the automatic Tier III sex offender classification "fails to meet the due process requirement of fundamental fairness." *Id.* at ¶ 85.

But the Court contrasted the procedure used for PRQJORs with that used for traditional juvenile-offender registrants. The Court noted that the imposition of R.C. Chapter 2950's requirements on the latter juveniles "rests within the juvenile court's discretion," *id.* at ¶ 20, because it is the court that determines these juveniles' tier classification. John is a traditional juvenile-offender registrant, and it was the juvenile court that classified him as a Tier III sex offender. Therefore the due-process holding in *In re C.P.* does not apply here.

2152.83(B)(1)(b). Under division (B) the court is not required to classify the juvenile as a juvenile-offender registrant. Instead, the court, "on the judge's own motion, *may* conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, *may* conduct at the time of the child's release from the secure facility a hearing" to determine whether the juvenile should be classified. (Emphasis added.) R.C. 2152.83(B)(1) and (B)(2). Here the juvenile court correctly applied division (B),[6] because John was 14 years old when he committed the offense for which he was adjudicated delinquent.

{¶ 10} If John had been 16 or 17 years old when he committed the offense, the juvenile court would be required to wait. Division (A) uses the word "shall," a word typically interpreted as imposing a duty or requirement. And Ohio courts appear to agree that if a court commits a juvenile to a secure facility, division (A) not only requires the court to classify the juvenile as a juvenile-offender registrant but also requires the court to do so when the juvenile is released. *See*, *e.g.*, *In re B.G.*, 5th Dist. Ashland No. 2011-COA-012, 2011-Ohio-5898, ¶ 32; *In re H.P.*, 9th Dist. Summit No. 24239, 2008-Ohio-5848, ¶ 14; *In re P.B.*, 4th Dist. Scioto No. 07CA3140, 2007-Ohio-3937, ¶ 7; *In re Thomas*, 8th Dist. Cuyahoga Nos. 83579, 83580, 2004-Ohio-6415, ¶ 13. As one court has reasoned, "[t]he plain language of R.C. 2152.83(A)(1) indicates that a juvenile court must classify a juvenile at disposition unless it commits the juvenile to a secure facility. In the case where a juvenile is committed to a secure facility, it must wait to classify the juvenile upon his release from the secure facility." *In re*

---

[6] At the hearing, the juvenile court referred to division (A), (Tr. 10), as did defense counsel, (Tr. 13). The references appear simply to be mistakes.

*H.P.* at *¶* 14. But the language used in division (A) differs from that used in division (B), in particular, division (B) uses the permissive word "may," and courts do not agree on what this division means. Thus the issue here concerns not *whether* the juvenile court should have classified John as a juvenile-offender registrant but *when* it did so. This issue is one of statutory interpretation.

**{¶ 11}** "'The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it.'" *State v. Hairston*, 101 Ohio St. 3d 308, 2004-Ohio-969, 804 N.E.2d 471, *¶* 11, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus. The first place to look for intent is the statute's language, *id.* at *¶* 12, reading the "[w]ords and phrases * * * in context and constru[ing] [them] according to the rules of grammar and common usage." R.C. 1.42. If the language unambiguously reveals its meaning, "'there is no occasion to resort to other means of interpretation.'" *Id.*, quoting *Slingluff* at paragraph two of the syllabus. It is important to remember that "'[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" *Id.*, quoting *Slingluff* at paragraph two of the syllabus. Therefore "a court may engage in statutory interpretation when the statute under review is ambiguous." *Id.*; *accord* R.C. 1.49. The question here, then, is whether division (B) of section 2152.83 is ambiguous. If it is, division (B) must be interpreted to determine the legislature's intent. But if it isn't ambiguous, no interpretation is necessary. The language must simply be applied. *Id.* at ¶ 13.

**{¶ 12}** The Fifth District has recently interpreted "may" as referring to *whether* not *when* a court imposes the juvenile-offender-registrant classification: "[T]he use of the word

'may' does not indicate the court has discretion regarding when to classify the child. Instead, the word 'may' indicates the court has discretion to determine whether the child should be classified." *In re B.G.*, 2011-Ohio-5898, at ¶ 37. The court reasoned that construing "may" as referring to when "is not what the Legislature intended." *Id*. at ¶ 32. Rather, "the Legislature intended for the court to classify the child only after determining whether the disposition and treatment provided for the child in a secure setting was effective." *Id*. at ¶ 37. "To hold otherwise," said the court, "would mean that children sixteen or seventeen years of age will not be classified until they have completed whatever programs DYS [Department of Youth Services] considers appropriate while they are in the secure facility, but a younger child could be determined to be a juvenile offender prior to receiving the benefit of whatever programs are available and appropriate in the secure setting." *Id*. at ¶ 39. Its interpretation, said the court, is "more in accord with the purpose and goals of the juvenile justice system." *Id*. at ¶ 40. With respect to the timing of classification, then, the Fifth District interprets division (B) much as it (and most other courts) interpret division (A).

{¶ 13}   But the Fifth District has not always interpreted division (B) this way. In at least three previous cases, the court concluded that the division's plain language places the timing issue within a juvenile court's discretion. *See In re Carr*, 5th Dist. Licking No. 08 CA 19, 2008-Ohio-5689; *In re McAllister*, Stark App. No.2006CA00073, 2006-Ohio-5554; *In re Callahan*, Ashland App. No. 04COA064, 2005-Ohio-735.[7] In these cases (unacknowledged in the recent decision discussed above) the court said that "the General Assembly's use of the

---

[7] The Fifth District's decision in *In re Kristopher W.*, 5th Dist. Tuscarawas No. 2008 AP 03 0022, 2008-Ohio-6075, while not directly resolving the issue, suggests that, in this case too, the court would have concluded that timing is discretionary. *See In re Kristopher W.* at ¶ 16-17.

word 'may' and the use of the conjunction 'or' triggers the trial court's discretion regarding *when* to make a sexual predator determination." (Emphasis added.) *In re Callahan* at ¶ 11. "The use of the word 'may' in the statute," said the court, "provides a trial court with *discretion* on whether to classify a juvenile and at *what times* to classify the juvenile." (Emphasis added.) *In re McAllister* at ¶ 10; *see In re Carr* at ¶ 21 (concluding that "the classification times set out in R.C. 2152.83[(B)(1)] [are] directory and not mandatory"). "Therefore," the court concluded, "the trial court has two times when it may consider classification under R.C. 2152.83(B)(1): 1) at the time of disposition, or 2) at the time of release from a secure facility." (Emphasis added.) *Id*. at ¶ 9.

{¶ 14} The Fourth District applies division (B) to reach the same conclusion. Citing the reasoning in the earlier Fifth District decisions, the Fourth District has concluded that "when an offender is fourteen years of age at the time of the offense, a court possesses discretion to make the sexual offender determination *either* at the time of disposition or at the child's release." (Emphasis sic.) *In re P.B.*, 2007-Ohio-3937, at ¶ 9.[8] The practical effect of the differing language, said the court, is that if division (A) applies courts have no discretion when to classify a juvenile but if division (B) applies they do. *Id*. at ¶ 8. The Fourth District relied on a plain-meaning rule of statutory interpretation: "We recognize that courts must follow a statute's plain language, regardless of the wisdom of the particular statutory provision." *Id*.

{¶ 15} We agree that the meaning of what the legislature did enact in division (B) is

---

[8]"As our Fifth District colleagues have noted, the Ohio General Assembly's use of the word 'may' and the conjunction 'or' in subsection (B)(1) triggers a court's discretion as to when to make the sexual predator classification." *In re P.B.* at ¶8.

not ambiguous, so we must reject any effort to determine what the legislature intended to enact. The difference in language between division (B) and division (A) is more than merely one word. Under division (B) classification as a juvenile-offender registrant is not automatic; a hearing must first be held after which the court must decide whether classification is appropriate. The hearing may be conducted at disposition or it may be conducted on a committed-juvenile's release, or the hearing need not be conducted at all. Division (B) states only that a court "may" conduct a hearing at either time–a court "may" choose not to conduct a hearing at either time, or perhaps a court "may" choose to conduct a hearing at both times. Of course, this choice exists only in a case in which the juvenile is committed to a secure facility.[9]

{¶ 16} Under division (B), in the case of a committed juvenile, a court has the (limited) discretion to, in effect, choose the time at which to classify a juvenile as a juvenile-offender registrant. Therefore the juvenile court here had the discretion to classify John as a juvenile-offender registrant at disposition.[10]

{¶ 17} The second assignment of error is overruled.

{¶ 18} The judgment of the juvenile court is affirmed.

. . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

---

[9] Appellant argues that division (B)(1) should be read as two independent sentences connected by the conjunction "or." In such a reading, the first conjunct would provide: "The court * * * may conduct at the time of disposition of the [juvenile] * * * a hearing" to determine when the juvenile could be classified. And the second conjunct would provide: "[I]f the court commits the [juvenile] * * * to the custody of a secure facility, [the court] may conduct at the time of the [juvenile]'s release from the secure facility a hearing" to determine when the juvenile could be classified. We believe that would be a strained reading of the statute.

[10] John does not contend that the juvenile court abused its discretion by classifying him at this time.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Sheryl A. Trzaska
Hon. Anthony Capizzi