**In re J.F.**

[Cite as *In re J.F.*, 178 Ohio App.3d 702, 2008-Ohio-4325.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 22181 and 22441.

Decided Aug. 22, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

Amanda J. Powell, Office of the Ohio Public Defender, for appellant, J.F.

FAIN, Judge.

{¶ 1} J.F., a juvenile, appeals from his adjudication as a delinquent and the disposition imposed by the trial court upon J.F.'s admission to a complaint alleging gross sexual imposition. J.F. also appeals from his commitment to the Ohio Department of Youth Services following alleged violation of his probation.

{¶ 2} J.F. contends that his admission to the complaint was not knowing, voluntary, and intelligent. J.F. also argues that trial counsel was ineffective because counsel failed to preserve J.F.'s issues for appeal. Finally, J.F. contends that his right to counsel was violated at the probation-revocation hearing because the trial court did not obtain a valid waiver of counsel.

{¶ 3} We conclude that the trial court failed to substantially comply with Juv.R. 29(D), because it did not discuss the potential consequences of J.F.'s admission. Because this holding requires reversal of the adjudication of delinquency and a remand for further proceedings, J.F.'s claim of ineffective assistance of counsel is moot.

{¶ 4} We further conclude that J.F. did not validly waive his right to counsel when he admitted to a probation violation. The record does not contain any evidence indicating that J.F. was advised or counseled by his parent, guardian, or custodian, or that he had consulted with an attorney before waiving his right to an attorney. Accordingly, the judgment accepting J.F.'s admission and adjudicating him delinquent, and the judgment committing J.F. to the Ohio Department

of Youth Services are both reversed, and this cause is remanded for further proceedings.

I

{¶ 5} In August 2006, the Miamisburg Police Department filed a complaint in the Montgomery County Juvenile Court against J.F. The complaint alleged that J.F. was delinquent because he had sexual contact with K.K., who was less than 13 years of age at the time of the contact. J.F. was 16 years old when the complaint was filed. The complaint further alleged that J.F.'s conduct violated R.C. 2907.05(A) (gross sexual imposition), which would be a felony of the third degree if committed by an adult.

{¶ 6} J.F. apparently appeared before a magistrate in mid-August 2006, but no transcript of the hearing is in the record. After the initial hearing, the magistrate committed J.F. to detention services based on a determination that continued residence at home would be contrary to J.F.'s welfare. In early September 2006, J.F. appeared at an adjudication hearing with his mother, step-father, and a public defender. At this hearing, the state indicated that J.F. wished to admit the charge of gross sexual imposition, and that the state had agreed not to prosecute on a potential additional charge of public indecency. During the hearing, the following colloquy occurred:

{¶ 7} "The Court: Do you understand that if you choose to do that [admit to the Gross Sexual Imposition charge], you do give up the specific legal right to have that trial, to challenge evidence or witnesses at a trial, to offer your own evidence or witnesses and for me to find that you are responsible of that charge by proof beyond a reasonable doubt? Those are rights that you give up if you admit and I accept it. Do you understand?

{¶ 8} "[J.F.]: No.

{¶ 9} "The Court: Okay. Let's back up. Do you understand that you don't have to admit to this today?

{¶ 10} "[J.F.]: Yeah.

{¶ 11} "The Court: I believe when you were in front of me a while back, I told you you could either admit to the charges or you could deny them, but I was going to deny it for you because it was a serious charge and I wanted to get you a lawyer. Do you remember that?

{¶ 12} "[J.F.]: Yeah.

{¶ 13} "The Court: You have options here today. You have the choice to admit. You have the choice to still keep your denial, and it would be set for a trial.

{¶ 14} "If it's set for a trial, then the evidence and witnesses do come in here to court. They are brought over here. They have to swear to tell the truth in your presence.

{¶ 15} "The prosecutor, Mr. Folfas, sitting at this other table, he gets to ask questions of the people that will come up. Your lawyer gets a chance to ask questions of the people that will come up. Your lawyer then also gets a question to call any people on your behalf. So if we go through the trial process, * * * that's the process that would have to happen, and I would have to decide at this trial did you commit the act of gross sexual imposition by proof beyond a reasonable doubt.

{¶ 16} "So do you understand that if you continue to deny it, that is the process that will happen? We'll have a trial, then I have to decide are you responsible or not responsible.

{¶ 17} "[J.F.]: Yeah.

{¶ 18} "The Court: Okay. My understanding today is that that's not going to happen that way, that you were going to choose to admit to this charge, and that means you would give up the right to go to trial, the right to remain silent, and the right to bring other evidence and witnesses in.

{¶ 19} "[J.F.]: Yes.

{¶ 20} "The Court: Do you understand that?

{¶ 21} "[J.F.]: Yes.

{¶ 22} "The Court: Okay. Do you understand no one—when you were first here the very first day, I talked to you and your family, and I read you a long list of your rights.

{¶ 23} "[J.F.]: Yeah.

{¶ 24} "The Court: And I also read you a long list of all the different possible consequences that could happen. Do you understand that that still could happen if you choose to admit to this?

{¶ 25} "[J.F.]: Yeah.

{¶ 26} "The Court: And in regard to this behavior, you are admitting to having sexual contact with K * * * K, who was not married to you, and she was under 13 years of age, whether you knew the age or not? Is that what you are admitting to?

{¶ 27} "[J.F.]: Yeah."

{¶ 28} Following the colloquy, the court accepted J.F.'s admission to gross sexual imposition and scheduled a dispositional and sex-offender-registration-notification hearing. The dispositional hearing was held in late October 2006, and

J.F. was again represented by counsel. At that time, the magistrate committed J.F. to the Ohio Department of Youth Services ("DYS") for an indefinite minimum period of six months and a maximum period to age 21. The magistrate suspended the commitment conditioned on J.F.'s good behavior and compliance with court orders and probation. In addition, the magistrate committed J.F. to the temporary custody of the juvenile court, placed J.F. on probation supervision until the beginning of August 2007, and sent J.F. to the Altercrest facility for treatment. With respect to J.F.'s sex-offender status, the magistrate informed J.F. that he had been designed a juvenile sex offender and was required to register in person with the sheriff of the county in which he established a residency within seven days of coming into the county. Registration was imposed for a period of ten years, with annual residence address verification.

{¶ 29} At the end of the hearing, the magistrate reminded the parties of the right to object to his written decision within 14 days, and of the right to appeal within 30 days of the final order. The magistrate also informed J.F. that he had the right to petition for a change in his sex-offender classification within three years after the initial classification.

{¶ 30} J.F. did not object to the magistrate's decision, nor did he file an appeal. Subsequently, J.F.'s probation officer filed a complaint in juvenile court in March 2007, alleging that J.F. had violated probation, his suspended commitment, and the court order by committing multiple rule violations at Altercrest, including hostile behavior, "non-critical AWOL," sexual misconduct, and damage to facility property. A hearing on the matter was held before a magistrate in April 2007. At the hearing, the following colloquy occurred:

{¶ 31} "The Court: As a result of this being filed against you, you're being brought back to court on the violation. It means you come back to court as if you started on the original charge, and so you have all the same juvenile legal rights that you had before, and you have all the same possible consequences that can be imposed on this violation.

{¶ 32} "Do you believe you understand this?

{¶ 33} "You've got to speak to me.

{¶ 34} "[J.F.]: Yes.

{¶ 35} "The Court: All right. You have the right to have an attorney or lawyer to help you and assist you as you did before, I believe. You understand that?

{¶ 36} "[J.F.]: Yes.

{¶ 37} "The Court: If you'd like to have your attorney or lawyer to help you and assist you, I would need you to tell me that. Would you like your attorney or lawyer to help you with this violation that is filed against you?

{¶ 38} "[J.F.]: No.

{¶ 39} "The Court: No? You believe you want to handle it on your own?

{¶ 40} "[J.F.]: Yes.

{¶ 41} "The Court: And in regard to the violation, do you believe that you want to accept responsibility for the violation or do you believe you want to deny responsibility for this violation?

{¶ 42} "[J.F.]: Yes sir. (Inaudible) I did it.

{¶ 43} "The Court: Do you want to accept it?

{¶ 44} "[J.F.]: Yes, sir.

{¶ 45} "The Court: Do you understand that by accepting responsibility, you give up the legal rights, like remaining silent, having a trial on this charge, on the complaint, having witnesses, evidence, brought in and sworn and to tell the truth under oath in front of you with your lawyer being there, and for me to decide at the end of this trial did you violate probation, suspended commitment or court order by proof beyond a reasonable doubt?

{¶ 46} "[J.F.]: Yes, sir.

{¶ 47} "The Court: You give those rights up if you admit. Is that understood?

{¶ 48} "[J.F.]: Yes, sir.

{¶ 49} "The Court: Knowing what the consequences can be, it's everything from the original time—that doesn't even include the revocation—meaning of your suspended commitment. You were given six months to 21 to the Ohio Department of Youth Services, to the state's custody, and it was suspended on the condition that you follow through with everything that you were supposed to do. Do you understand that?

{¶ 50} "[J.F.]: Yes, sir.

{¶ 51} "The Court: You appear to be freely, voluntarily, of your own free will accepting responsibility. Is that correct?

{¶ 52} "[J.F.]: Yes, sir.

{¶ 53} "The Court: And you are responsible for the misconduct in the violation, and that's why you're accepting responsibility for it?

{¶ 54} "[J.F.]: Yes, sir."

{¶ 55} J.F.'s probation officer indicated at the hearing that J.F. had been the subject of multiple reports of violent and destructive behavior and violence

toward peers and staff members. Staff members had been injured while restraining J.F. on one or two occasions. J.F. was also charged with criminal damaging for being destructive toward Altercrest's property in two incidents. In addition, J.F. had continued to engage in sexualized behavior toward staff and other peers. J.F. had also left the building without permission on multiple occasions. Accordingly, the probation department and formal review team recommended that J.F. be committed to Ohio DYS and that he continue with sex-offender treatment.

{¶ 56} J.F.'s mother was present at the hearing and asked that J.F. continue to receive help for his sexual activity. The court ordered J.F. committed to DYS for a minimum of six months and a maximum term not to exceed J.F.'s attainment of 21 years of age, with credit for 89 days toward the minimum for time J.F. had already been in detention. The court also notified J.F. of the right to object to the magistrate's decision and of the right to file an appeal within 30 days of the date of any final orders.

{¶ 57} The magistrate's decision and court's order adopting the decision were filed on April 11, 2007. No objections were filed.

{¶ 58} J.F. timely appealed from the April 2007 commitment order, and that appeal was designated case No. 22181. J.F. also filed a motion for leave to file a delayed appeal of the original adjudication and disposition orders, and that appeal was designated case No. 22441. We concluded that J.F. did not need permission to appeal, due to the trial court clerk's failure to place an entry on its appearance docket noting service of the judgment. The clerk's failure to comply with Civ.R. 58(B), therefore, tolled the time for filing the appeal. Subsequently, we consolidated the two appeals.

## II

{¶ 59} J.F.'s first assignment of error is as follows:

{¶ 60} "[J.F.]'s admission to gross sexual imposition was not knowing, voluntary, and intelligent, in violation of the fifth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution, and Juvenile Rule 29."

{¶ 61} Under this assignment of error, J.F. contends that the trial court failed to strictly or substantially comply with Juv.R. 29(D), because it did not explain the consequences of J.F.'s admission to the charge or the possible punishments J.F. could receive upon being adjudicated delinquent.

{¶ 62} Juv.R. 29(B) requires courts to do the following at the beginning of adjudicatory hearings:

{¶ 63} "(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;

{¶ 64} "(2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv. R. 30 where the complaint alleges that a child fourteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult;

{¶ 65} "(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;

{¶ 66} "(4) Appoint counsel for any unrepresented party under Juv. R. 4(A) who does not waive the right to counsel;

{¶ 67} "(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."

{¶ 68} Juv.R. Rule 29(D) also contains requirements for accepting a juvenile's admission to a charge. Juv.R. 29(D) provides:

{¶ 69} "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

{¶ 70} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

{¶ 71} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."

{¶ 72} The Ohio Supreme Court has held that strict compliance with Juv.R. 29(D) is the preferred practice in juvenile-delinquency cases. *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at paragraph six of the syllabus. However, the court has also stressed that if a trial court substantially complies with Juv.R. 29(D), "the plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver." Id.

{¶ 73} The record of the adjudicatory hearing indicates that the magistrate failed to discuss the potential consequences of J.F.'s admission. The magistrate did refer to a prior hearing in which he had outlined a list of consequences, but there was no indication of what the specific consequences were. According to the state, we should presume the regularity of the proceedings and reject J.F.'s

appeal, since the trial court explained the potential consequences at a prior hearing. We disagree.

{¶ 74} "The presumption of regularity in trial proceedings means that error is never presumed, but must be demonstrated from the record." *In re Seaman* (Mar. 9, 2001), Montgomery App. No. 18530, 2001 WL 227392, *2. This does not necessarily mean that we should presume the details of certain matters that are said to have occurred, when the record does not permit an evaluation of the facts.

{¶ 75} We have previously found substantial compliance where the trial court failed to make a Juv.R. 29(B)(2) explanation at the adjudicatory hearing. See *In re Pyles*, Montgomery App. No. 19354, 2002-Ohio-5539, 2002 WL 31317249. In concluding that substantial compliance existed in *Pyles*, we relied on our review of the record, which indicated that the trial court had explained the rights in detail at the initial hearing. Id. at ¶ 11. The record in the present case does not allow such a conclusion.

{¶ 76} The juvenile in *Pyles* also admitted in his reply brief that he may have received an adequate explanation at the initial hearing. Id. at ¶ 15. No such admission has occurred here. And finally, we noted in *Pyles* that the juvenile had a full adversarial trial and did not make any admissions implicating Juv.R. 29(D). Id. at ¶ 16. In contrast, J.F. made admissions and the potential consequences of his admissions should have been discussed at the adjudicatory hearing.

{¶ 77} J.F.'s first assignment of error is sustained.

### III

{¶ 78} J.F.'s second assignment of error is as follows:

{¶ 79} "[J.F.] was denied his constitutional right to effective assistance of counsel. Fourteenth Amendment to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution."

{¶ 80} J.F. contends under this assignment of error that his trial counsel was ineffective, because she failed to file objections to the magistrate's report, which resulted in waiver on appeal of arguments other than plain error.

{¶ 81} "To prevail on a claim of ineffective assistance of trial counsel, a defendant must show both deficient performance, and resulting prejudice." *In re J.W.*, Montgomery App. No. 19869, 2003-Ohio-5096, 2003 WL 22220345, at ¶ 8, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 82} "To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. * * * Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of

effective assistance. * * * The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time.

{¶ 83} "Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. * * * Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Jackson,* Champaign App. No. 2004–CA–24, 2005-Ohio-6143, 2005 WL 3081110, at ¶ 29–30.

{¶ 84} Because we have considered and sustained J.F.'s first assignment of error, this assignment of error is moot. We note that parties may raise plain error on appeal, even where objections were not filed in juvenile court. *In re Harper,* Montgomery App. No. 19948, 2003-Ohio-6666, 2003 WL 22927248, at ¶ 5. Courts have also considered alleged error despite the failure to file objections, where the clerk failed to comply with Civ.R. 58(B). *Peroz v. Nagel,* Summit App. No. 21437, 2003-Ohio-6584, 2003 WL 22900622, at ¶ 11 ("The failure to provide notice to the attorney of record frustrates the process of review of a magistrate's decision and is contrary to the mandates of the civil rules").

{¶ 85} J.F.'s second assignment of error is overruled as moot.

IV

{¶ 86} J.F.'s third assignment of error is as follows:

{¶ 87} "The trial court violated [J.F.]'s right to counsel and to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Section 16, Article I of the Ohio Constitution, Ohio Revised Code Section 2151.352 and Juvenile Rules 3, 4, and 29."

{¶ 88} Under this assignment of error, J.F. contends that the trial court violated his right to counsel by failing to obtain a valid waiver of counsel. The state argues that even if error occurred, it was harmless, because J.F. had previously been warned at the disposition hearing of the consequences of failing to comply with probation and the conditions of his suspended commitment to DYS.

{¶ 89} The Ohio Supreme Court held as follows in *In re C.S.*:

{¶ 90} "In a delinquency proceeding, a juvenile may waive his constitutional right to counsel, subject to certain standards, if he is counseled and advised by his parent, custodian, or guardian. If the juvenile is not counseled by his parent, guardian, or custodian and has not consulted with an attorney, he may not waive

his right to counsel." 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at paragraph two of the syllabus.

{¶ 91} In *In re C.S.*, the Ohio Supreme Court also instructed courts to use a totality-of-the-circumstances analysis to decide whether a juvenile has validly waived counsel. Id. at ¶ 108. This test incorporates "a number of factors and circumstances, including the age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's rights; the juvenile's conduct; the juvenile's emotional stability; and the complexity of the proceedings." Id., citing *In re Dalton S.* (2007), 273 Neb. 504, 515, 730 N.W.2d 816. According to the Ohio Supreme Court, "a key factor in the totality of the circumstances is the degree to which the juvenile's parent is capable of assisting and willing to assist the juvenile in the waiver analysis." 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 110.

{¶ 92} We applied the totality-of-the-circumstances test in a recent decision. See *In re E.H.*, Montgomery App. No. 22259, 2007-Ohio-6263, 2007 WL 4170882, at ¶ 26–27. As in the present case, the juvenile's mother attended her son's parole-revocation hearing. However, we found "no evidence that she counseled and advised him on the issue of waiving his right to counsel." (Emphasis omitted.) Id. at ¶ 27. The mother did give a positive response when asked whether she believed that her son understood his constitutional rights. However, we held that this was insufficient to indicate that she had counseled or advised him. Id. Accordingly, we reversed the judgment and remanded the matter for further proceedings.

{¶ 93} In the present case, J.F.'s mother was present at the hearing, but she simply requested continued treatment and asked that J.F. not be detained long before being transported to DYS. There is no indication that J.F.'s mother counseled him about waiving his right to counsel. In fact, unlike the parent in the case of *In re E.H.*, J.F.'s mother was not even asked whether she believed that J.F. understood his constitutional rights.

{¶ 94} Furthermore, the error was not harmless. To be valid, a " 'waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *State v. Gibson* (1976), 45 Ohio St.2d 366, 377, 74 O.O.2d 525, 345 N.E.2d 399. Accord, *In re Bays*, Greene App. Nos. 2002–CA–52 and 2002–CA–56, 2003-Ohio-1256, 2003 WL 1193787, at ¶ 11. J.F. was not advised of, nor did he apprehend possible

defenses to the alleged violations or circumstances that might mitigate his potential punishment, and he did not validly waive his right to counsel.

{¶ 95} Furthermore, although the trial court originally indicated that a probation violation would result in J.F.'s commitment to DYS, a sentencing court has discretion in deciding what sanctions it will apply for probation violations. The trial court could have changed its mind about the commitment to DYS if it felt another course of action would be more appropriate. Again, J.F. did not have counsel to advise him about this possibility, nor is there evidence that his mother counseled and advised him about waiving his right to an attorney.

{¶ 96} J.F.'s third assignment of error is sustained.

## V

{¶ 97} J.F.'s first and third assignments of error having been sustained, and his second assignment of error having been overruled as moot, the judgment of the trial court accepting J.F.'s admission and adjudicating him delinquent, and the judgment committing J.F. to the Ohio Department of Youth Services are both reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgments reversed
and cause remanded.

GRADY and DONOVAN, JJ., concur.