## IV

In re G.W.

[Cite as In re G.W., 186 Ohio App.3d 399, 2009-Ohio-4324.]

Court of Appeals of Ohio,
Second District, Clark County.

Nos. 2008 CA 124 and 2008 CA 125.

Decided Aug. 21, 2009.

400

Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Amanda J. Powell, Assistant State Public Defender, for appellant.

FRENCH, Judge.

{¶ 1} G.W., a minor, appeals two judgments by the Clark County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which found that he was a delinquent youth and committed him to the Department of Youth Services ("DYS"). Having considered whether the trial court proceedings complied with Juv.R. 29(D), we reverse one judgment and affirm one judgment.

{¶ 2} In July 2008, in case No. 2008–0367, for reasons not presently before this court, the trial court determined that G.W. was a delinquent child. The court suspended G.W.'s commitment to DYS and assigned him to an alternative program, "BOYAC." The July 28, 2008 journal entry noted that failure to successfully complete the BOYAC program would result in the imposition of DYS commitment.

{¶ 3} On September 12, 2008, G.W.'s probation officer, Matthew Wilson, filed a complaint in case No. 2008–0367. The complaint alleged that G.W. had violated the terms of his probation. Specifically, the complaint alleged that G.W. (1) had skipped school at the BOYAC program on three dates and (2) had not obeyed his probation officer's instruction not to engage in physical altercations with other youths in the BOYAC program and had struck another youth. Hereinafter, we will refer to this complaint as the "probation complaint."

{¶ 4} On September 12, 2008, G.W. appeared before a magistrate. The magistrate apparently conducted the hearing of multiple cases at once. At the

outset, she gave instructions to each juvenile, parent, or guardian present. She explained that the juvenile could admit or deny the charge. She also explained the following rights: the right to representation, including appointed representation, if appropriate; the right to a trial; the right to confront and cross-examine the state's witnesses; the right to present witnesses; and the right to remain silent or testify.

{¶ 5} The magistrate again explained that the juvenile could admit or deny the charge. As to the right to admit the charge, the magistrate stated: "If you admit the charge, you're essentially saying, Judge, I did do what I'm accused of."

{¶ 6} The magistrate called G.W.'s name, and she addressed G.W. directly. She asked G.W. if he understood the rights she had explained, and he answered, "Yes." She also explained each of the alleged probation violations and asked if he understood them. He responded, "Yes, ma'am." G.W. then denied the charges, and the magistrate entered the denial.

{¶ 7} Following her explanation to G.W.'s father of the process for obtaining representation from the public defender's office, the magistrate stated: "[G.W.] will be held at this time since he went AWOL, and I have a memo from Mr. Wilson that he cut off his electronic monitor." G.W. stated: "No. The guy I was with cut it off. He's saying that. I didn't cut it off. I told him I didn't want to, but he did anyways. And Mr. Wilson seen him take it down the alley and do something with it." The magistrate responded, "Okay. That will be all today."

{¶ 8} On October 10, 2008, G.W. appeared before a magistrate for a pretrial concerning the probation complaint. Following indications from both the prosecutor and G.W.'s counsel, the magistrate asked G.W. if it was his intention to admit the probation violations. G.W. responded, "Yes, ma'am." G.W. responded affirmatively when asked if he understood that he could have a trial on the probation complaint, if he wanted to give up his right to trial because he did commit the violations, and if he understood that he would likely be sent to DYS.

{¶ 9} The magistrate then reviewed the alleged violations. She asked G.W. if the charge concerning skipping school was true, and he said, "Yes, ma'am." She also asked if the charge concerning his striking another youth was true, and he said, "Yeah. After he hit me I hit him back." The magistrate said, "Okay. But are you admitting you struck another youth in the program?" G.W. said, "Yes, ma'am." When asked if Mr. Wilson had advised him not to engage in physical altercations, G.W. said yes, but also said that he "really didn't understand him clearly, but I know he said we wasn't allowed to fight." G.W. explained his version of what had occurred—that another youth had instigated the altercation by hitting G.W. with a board and that a third youth had blocked the doorway. The magistrate asked, "So you are admitting the probation violation of Rule No. 8?" G.W. said, "Yes, ma'am."

{¶ 10} On October 29, 2008, G.W. appeared before a magistrate in case No. 2008–1723. The appearance stemmed from an October 10, 2008 complaint, which alleged that G.W. had caused serious physical harm to government property. Specifically, the complaint alleged that G.W. had cut off the ankle bracelet used to monitor his whereabouts electronically. Hereinafter, we will refer to case No. 2008–1723 as the "vandalism case."

{¶ 11} G.W. appeared at the October 29, 2008 hearing without an adult present on his behalf. Noting the absence of an adult, the magistrate stated that the court could not go forward with an arraignment, but would proceed with a detention hearing. The magistrate explained G.W.'s rights. Without asking if G.W. understood his rights, the magistrate immediately explained the alleged charge. In particular, the magistrate stated: "It says your Tracker Pal ankle bracelet, ID 669842 totalling $550 and battery totaling $28 was seriously damaged." G.W. then stated: "Mr. Wilson said that—he said I had to pay $570 for it." In response, the magistrate said that they could not "talk about that today, [G.W.], because I can't ask you to admit or deny that. At a detention hearing I just make sure that you know your rights and you understand why you were charged with this." Without response from G.W., the magistrate then discussed with probation staff whether G.W. should be detained or go back to BOYAC.

{¶ 12} G.W. appeared before a judge on November 12, 2008. At the outset, the court asked if there had been an adjudication in the vandalism case. Following some confusion about the presence of G.W.'s father, his defense counsel, and the probation officer, the court called the vandalism case. The court indicated that it had initially entered a denial to the vandalism charge because no parent or guardian was with G.W. The court gave G.W. an opportunity to speak with his attorney. The court also said, "Vandalism is an allegation that he cut off his electronic monitor." When told that the monitor had not been recovered, the court said, "So the accusation is he committed felony vandalism, a felony of the fifth degree. The allegation is before the court with no admission that I see on the record." The court said that if G.W. admitted to the vandalism charge, it would adjudicate him delinquent and assess restitution in the amount of $570.

{¶ 13} After G.W. and his attorney conferred, the attorney indicated that G.W. wanted to admit the charge. G.W. answered affirmatively when the court asked if the admission was his voluntary decision and if he understood that, based on the admission, the court would conclude that he had committed the offense and proceed with disposition. The court asked G.W. if he understood that he was giving up his right to trial, to present witnesses, to be represented, and to remain silent. The court also asked if G.W. understood that if it is a felony offense, he could be sent to DYS for a minimum of six months. G.W. answered affirmatively. The court also gave G.W. time to talk with his father. Thereafter, G.W. admitted

to the "vandalism offense as described in the complaint." The trial court found G.W. to be a delinquent youth based on his admission in the vandalism case.

{¶ 14} The trial court then proceeded immediately to disposition on both the vandalism case and the probation complaint. In the vandalism case, the court committed G.W. to DYS for a minimum term of six months and assessed restitution in the amount of $570 and a fine of $25 and costs. On the probation complaint, the court committed G.W. to DYS for a consecutive minimum term of six months and assessed an additional fine of $25 and costs.

{¶ 15} G.W. filed a timely appeal, and he raises the following assignment of error:

{¶ 16} "[G.W.'s] admissions to his delinquency charges were not knowing, intelligent, and voluntary in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution, and Juvenile Rule 29."

{¶ 17} As G.W. asserts, a juvenile facing delinquency proceedings is entitled to due process of law, as guaranteed by the Ohio and United States Constitutions. See *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 71–73, 79, citing *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. Like an adult's guilty plea, a juvenile's admission to an alleged offense implicates important procedural safeguards. A juvenile court must inquire carefully to ensure that an admission is entered voluntarily, intelligently, and knowingly. *In re J.R.P.*, 175 Ohio App.3d 481, 2008-Ohio-989, 887 N.E.2d 1222, ¶ 32. Substantial compliance with procedural requirements is required. Id.

{¶ 18} Juv.R. 29 contains the procedures for scheduling and conducting adjudicatory hearings in juvenile cases. The Supreme Court of Ohio recently confirmed that Juv.R. 29 applies to juvenile probation-revocation hearings, too. *In re L.A.B.*, 121 Ohio St.3d 112, 2009-Ohio-354, 902 N.E.2d 471, ¶ 49.

{¶ 19} Juv.R. 29(B) requires the court, "[a]t the beginning of the hearing," to do "all of the following:" (1) determine whether notice requirements have been met, (2) inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, (3) inform unrepresented parties of their right to counsel, (4) appoint counsel, if necessary, and (5) if a party waives his or her right to counsel, advise that party of certain rights.

{¶ 20} Juv.R. 29(C) then requires the court to ask the juvenile to admit or deny the allegations. Where a juvenile admits the allegations, Juv.R. 29(D) requires the court to make certain findings, as follows:

{¶ 21} "[Juv.R. 29](D) Initial procedure upon entry of an admission

{¶ 22} "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

{¶ 23} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

{¶ 24} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."

{¶ 25} Here, G.W. contends that the court failed to adhere to Juv.R. 29(D) when it accepted his admissions to the probation complaint and in the vandalism case. We begin with the proceedings applicable to the probation complaint.

{¶ 26} As we indicated above, G.W. appeared before a magistrate at the September 12, 2008 hearing, and, at that hearing, the magistrate gave a detailed description of a juvenile's rights and explained the consequences of an admission. At that hearing, G.W. entered a denial. It was not until the October 10, 2008 pretrial hearing that G.W. entered an admission. At that hearing, while the magistrate asked G.W. if he understood that he was entitled to a trial, the magistrate did not ensure that G.W. understood that by entering an admission, he was waiving his right to challenge the witnesses and evidence against him, to remain silent, and to introduce his own evidence, as required by Juv.R. 29(D)(2). G.W. also notes that the magistrate failed to inform him of the "substance of the complaint" at the beginning of the hearing and did not ascertain whether he understood the "nature of the allegations," as required by Juv.R. 29(D)(1).

{¶ 27} The state contends, however, that the magistrate substantially complied with Juv.R. 29(D) in all these respects. For these purposes, "substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 113. To make this argument, the state looks not only to the October 10 pretrial, but also to the September 12 arraignment. Viewing these proceedings in totality, the state argues, the trial court complied with Juv.R. 29(D).

{¶ 28} We agree, first, with the state's argument that the magistrate adequately informed G.W. of the nature of the complaint and the consequences of an admission. While the magistrate did not review the specific details of the probation complaint at the pretrial until after G.W. had admitted to the violations, the magistrate confirmed his admission to both violations and only after an extended discussion about the circumstances surrounding G.W.'s altercation with another youth. She had specifically asked him if he understood that his admission could result in his commitment to DYS. And, while G.W. suggested

that his actions were justified, he admitted that he struck another youth, contrary to his probation officer's instructions.

{¶ 29} More difficult is the question whether the magistrate's explanation of G.W.'s rights at the September 12, 2008 arraignment, when he entered a denial, was sufficient for purposes of accepting his admission at the October 10, 2008 pretrial. This court has previously found substantial compliance with Juv.R. 29(D) when a magistrate explained a juvenile's rights at an initial hearing, but not at the adjudication hearing. See *In re Pyles,* Montgomery App. No. 19354, 2002-Ohio-5539, 2002 WL 31317249 (in which the juvenile conceded that there was compliance at the initial hearing, and a full adversarial trial occurred). This court has done so, however, only when the record allowed this court to confirm that the trial court had explained the rights in detail at the prior hearing. When the record did not allow this court to determine whether the trial court had explained the juvenile's right in a prior hearing, this court declined to assume the regularity of the adjudication and concluded that Juv.R. 29(D) had not been met. See *In re J.F.,* 178 Ohio App.3d 702, 2008-Ohio-4325, 900 N.E.2d 204, ¶ 75–76 (distinguishing *In re Pyles*).

{¶ 30} Here, the record allows us to determine that at the September 12 hearing, the magistrate explained that by entering an admission, a juvenile would give up his or her right to challenge the state's witnesses and evidence, to remain silent, and to introduce evidence. After hearing that explanation, G.W. entered a denial to the probation complaint, not an admission, so the requirements of Juv.R. 29(D), which require the magistrate to address G.W. personally about those rights, were not triggered, and the magistrate did not do so. When G.W. entered an admission at the October 10 hearing, the court asked G.W. if he understood that he could "have a trial" on the probation complaint, but did not address G.W.'s rights to challenge the state's witnesses and evidence, to remain silent, and to introduce evidence. Even considering the September 12 and October 10 hearings together, we may only conclude that no one addressed G.W. personally to determine whether he understood that by admitting to the probation complaint, he was giving up these rights. Therefore, we conclude that the trial court did not comply with Juv.R. 29(D) and, accordingly, that G.W. did not subjectively understand the consequences of his admission to the probation complaint.

{¶ 31} Next, we consider G.W.'s contention that his admission in the vandalism case was not voluntary. Specifically, he contends that the court (1) failed to determine whether he understood the nature of the allegations and the consequences of his admission, as required by Juv.R. 29(D)(1), and (2) failed to determine whether he understood the rights he would give up by entering an admission, as required by Juv.R. 29(D)(2).

{¶ 32} Here, G.W.'s statements at the September 12 hearing indicate that he knew that Mr. Wilson had alleged that G.W. cut off his monitor, although G.W. said that another youth had cut it off. At the October 29 hearing, the magistrate read the complaint, identified the bracelet and battery, and indicated the value of the property. G.W.'s response at that time—that Mr. Wilson told him he would have to pay $570—also indicates that he understood the nature of the complaint. Although there was confusion at the beginning of the November 12 hearing, and the court did not provide the details of the complaint, the court did identify the "allegation that he cut off his electronic monitor." The court also confirmed that the bracelet had not been recovered and that it was "felony vandalism, a felony of the fifth degree." Considering all three proceedings together, we conclude that the court substantially complied with its obligation to determine whether G.W. understood the nature of the vandalism allegation. While we agree with G.W. that the court did not comply strictly, the record as a whole demonstrates that G.W. understood that Mr. Wilson had alleged that G.W. cut off the ankle bracelet, that it was not recovered, and that the value was about $570.

{¶ 33} We also conclude that the court properly determined that G.W. understood the consequences of his admission. The court explained that G.W. could be sent to DYS—which G.W. understood to be "a prison for kids"—for a minimum of six months and that he could remain there until he turned 21. We also note that the extended discussion between G.W. and the court at the end of the hearing demonstrates that G.W. understood that his behavior determined the length of his stay at DYS.

{¶ 34} Finally, we conclude that the court complied with Juv.R. 29(D)(2), which required the court to determine whether G.W. understood the rights he would give up by entering an admission. The court addressed G.W. directly and asked if he understood that "you could present your own witnesses and your evidence. The lawyer could assist you. You could testify, or you could remain silent." G.W. answered affirmatively. This colloquy demonstrates compliance with Juv.R. 29(D)(2). Having concluded that the court complied with Juv.R. 29 in other respects, we conclude that G.W. subjectively understood the implications of his admission in the vandalism case.

{¶ 35} For all these reasons, we sustain G.W.'s assignment of error in part and overrule it in part. We reverse the trial court's judgment on the probation complaint in case No. 2008–0367, and we remand that matter to the trial court for further proceedings. We affirm the court's judgment in the vandalism case, case No. 2008–1723.

Judgment accordingly.

BROGAN and FAIN, JJ., concur.

JUDITH L. FRENCH, J., of the Tenth District Court of Appeals, sitting by assignment.