[Cite as *In re J.O.*, 2014-Ohio-2813.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: J.O.                               :

                                          :        C.A. CASE NO.    25903

                                          :        T.C. NO.    2013-3848-01

                                          :        (Civil appeal from Common
                                                     Pleas    Court,    Juvenile
Division)
                                          :

                                          :

                             . . . . . . . . . .

## **O P I N I O N**

Rendered on the _____27th_____ day of _____June_____, 2014.

                             . . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

BROOKE M. BURNS, Atty. Reg. No. 0080256, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
          Attorney for Defendant-Appellant

                             . . . . . . . . . .

DONOVAN, J.

{¶ 1} Appellant J.O. appeals from a judgment of the Montgomery Court of Common Pleas, Juvenile Division, which adjudicated him to be a delinquent for having committed rape and designated him a Tier III juvenile sex offender/child victim offender. J.O. filed a timely notice of appeal with this Court on September 6, 2013.

{¶ 2} The incident which formed the basis for the instant appeal occurred on May 11, 2013, when the victim, sixteen year-old S.H., attended a play rehearsal at her church. Also attending the rehearsal was J.O. After the rehearsal was over, J.O., whom had known S.H. for approximately two months, approached her and said, "You should give me a ride home." S.H. complied, and she and J.O. left the church in her car.

{¶ 3} While driving, S.H. and J.O. initially discussed an earlier situation where he had swiped his hand over her vagina while she was retrieving her belongings from a closet at their church. S.H. testified that she apologized to J.O. for the way she handled the situation. Even though the touch was inappropriate and unwanted, S.H. testified that she told J.O. that she regretted having her boyfriend handle the situation, instead of confronting J.O. herself. S.H. also told J.O. that she had a "crush" on him when he first started attending their church.

{¶ 4} At that point, J.O. put his hand on her thigh and started rubbing it. When S.H. asked him what he was doing, J.O. stated, "Well, isn't it obvious?" J.O. asked S.H. to give him a "blow job." S.H. declined, stating, "that thing doesn't come near my mouth." S.H. testified that J.O. started talking about having sex with her. S.H. testified that she told J.O. that she was a virgin and was saving herself for marriage. Undeterred, J.O. pulled his penis out of his pants, grabbed S.H.'s right hand, and placed her hand on his penis, moving it up and down. S.H. pulled her hand away and placed it back on the steering wheel, stating,

"Somebody can see." J.O. replied, "Nobody can see."

{¶ 5} J.O. also began repeatedly asking her to pull over somewhere so that they could have sex. S.H. testified that J.O.'s tone of voice indicated to her that they were going to do what he wanted to do "no matter what." In response to his repeated demands to pull over, S.H. testified that she was shaking her head no, but stated either, "I don't know," or "I don't care." Eventually, J.O. was able to direct S.H. to drive to the back of a nearby parking lot and stop between two tractor trailers where they ostensibly would not be seen.

{¶ 6} J.O. slid closer to S.H. and put his hand down her pants. S.H. testified that J.O. placed his fingers in her vagina. J.O. then told S.H. that she should show him her breasts. S.H. testified that because she felt intimidated and helpless, she complied with J.O.'s request and pulled up her shirt. J.O. responded by putting his mouth on her breast.

{¶ 7} J.O. then told S.H. that they should get in the backseat of the car. When S.H. asked why, J.O. stated, "Because it was easier." S.H. testified that J.O.'s tone of voice at that point was, "We're going to do what I want to do." Once in the backseat of the car, J.O. told S.H. to take off her pants, but she said "No." S.H. testified on direct that J.O. then pushed her pants down while she was trying to pull them back up. On cross- examination, S.H. admitted that in her statement to police she said that she took her pants off herself at J.O.'s insistence.

{¶ 8} Nevertheless, once S.H.'s pants had been removed, J.O. pulled his penis out of his pants. S.H. testified that she told him, "Don't put that thing in me." J.O replied, "I won't. I'll only rub it on [your vagina]." J.O. then directed S.H. to remove her underwear, but S.H. told him, "No." J.O. simply moved her underwear aside and began rubbing his

penis on her vagina. While J.O. was doing that, S.H. testified that she kept telling him, "No. Don't. Stop." J.O. stated "Just once." S.H. said, "No." J.O., however, proceeded to insert his penis into S.H.'s vagina. S.H. testified that she struggled to get out from under J.O., but he wouldn't stop despite her repeatedly telling him, "No." S.H. testified that J.O. ultimately pulled out before ejaculating on her breast and a section of the backseat.

{¶ 9} S.H. put her clothes back on, got in the front seat of her car, and drove J.O. to his house. S.H. returned to her house where she lived with her mother and father, and her friend C.H. After some questioning regarding her sullen demeanor, S.H. informed C.H. that J.O. had raped her. S.H. told C.H. that she "felt disgusting" and that she "didn't do enough to stop [the rape]" from occurring.

{¶ 10} On the following day, S.H. returned to the church to rehearse the play. J.O. also attended the rehearsal. When he observed S.H., J.O. asked her if "she was still sore." S.H. told him to "shut the * * * up," and she left the church. Upon returning home, S.H. eventually told her parents that she had been raped. S.H.'s father immediately called the police, and J.O. was arrested shortly thereafter.

{¶ 11} On May 31, 2013, J.O. was charged by complaint with delinquency for committing forcible rape and gross sexual imposition. An adjudicatory hearing was held before the juvenile court on July 9, 2013. After hearing the testimony of S.H. and C.H., the juvenile court found J.O. responsible for the rape charge and not responsible for the charge of gross sexual imposition. By reason of J.O.'s commission of the rape, the juvenile court found that he had violated the terms of his probation in a previous case.[1] On August 9,

---

[1] J.O. was previously adjudicated delinquent for committing a rape in Case

2013, the juvenile court ordered J.O. to be committed to the Department of Youth Services for a minimum of one year until he reached the age of twenty-one on the rape charge and for a minimum of one year until he reached the age of twenty-one on the probation violation, both commitments to be served consecutively. The juvenile court also designated J.O. as a Tier III juvenile sex offender/child victim offender.

{¶ 12} It is from this judgment that J.O. now appeals.

{¶ 13} J.O's first assignment of error is as follows:

{¶ 14} "THE MONTGOMERY JUVENILE COURT VIOLATED J.O.'S RIGHT TO DUE PROCESS WHEN IT ADJUDICATED HIM DELINQUENT OF RAPE BASED ON UNRELIABLE EVIDENCE THAT DOES NOT SUPPORT THE FINDING BEYOND A REASONABLE DOUBT, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND JUV. R. 29."

{¶ 15} In his first assignment of error, J.O. contends that the juvenile court's decision finding him delinquent for committing rape was against the manifest weight of the evidence. Specifically, J.O. argues that S.H.'s testimony was inconsistent and therefore, lacked credibility. Additionally, J.O. asserts that some of the comments made by the juvenile court when it adjudicated him delinquent for rape do not support its finding beyond a reasonable doubt.

{¶ 16} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all

No. JC 2012-5789.

reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} In *State v. Peterson*, 2013-Ohio-1807, 992 N.E.2d 425 (10th Dist.), the Tenth District Court of Appeals observed that:

In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. (Citations omitted.) *Peterson* at ¶ 12.

{¶ 18} Initially, we note that J.O. was found to be delinquent for committing forcible rape, in violation of R.C. 2907.02(A)(2), which states in pertinent part:

(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶ 19} When it found J.O. delinquent for raping S.H., the juvenile court made the following statement:

The victim in this case has testified and shared information which many of us would find very, very questionable in decision making and the process that – that appeared to occur in this particular matter. At the same time, there's a lot of things that, to many of us, as adults, would say don't make a lot of sense at all. Yet, the testimony in this case also had what I call a ring of truth.

{¶ 20} Additionally, after the juvenile court stated that S.H.'s testimony "had *** a ring of truth to it," it made the following statement regarding her testimony:

*The Court finds that the testimony that has been presented lets the Court find that [J.O.] is responsible beyond a reasonable doubt for the charge of rape, or delinquency by reason of rape, in that there is clear testimony, really undisputed, that the victim, at the time of the rape, said no, no, no, no, no. And no, at anytime, means no. [J.O.] proceeded.*

{¶ 21} J.O. argues that the juvenile court's comment that S.H.'s testimony "had *** a ring of truth to it," establishes that her testimony was "so lacking in credibility that the juvenile court's adjudication of delinquency" was against the manifest weight of the evidence. In support of his argument, J.O. directs our attention to certain inconsistencies

between S.H.'s testimony during direct examination and when she was cross-examined by defense counsel. Upon review of the record, the only inconsistency between S.H.'s direct testimony and cross-examination testimony occurred when she testified on direct that J.O. pushed her pants down while she was trying to pull them back up after they got into the backseat. On cross- examination, S.H. admitted that in her statement to police she said that she took her pants off herself at J.O.'s insistence. We note, however, that contrary to J.O's assertion, S.H. never testified that she took off her underwear. Rather, S.H. testified that after she expressly told him not to, J.O. pushed her panties aside and began rubbing his penis on her vagina. S.H. testified that this occurred just before he inserted his penis into her vagina, also after she had repeatedly told him "no."

{¶ 22} S.H. unequivocally testified that the reason she complied with J.O's initial requests to pull over, take off her shirt, get in the back seat, and remove her pants was because she felt intimidated and helpless. Before J.O. inserted his penis into her vagina, S.H. testified that she told him "no" repeatedly and "don't put that thing in me." During the sex act, S.H. testified that she continued to say "no" and tried unsuccessfully to push J.O. off of her. Despite how many times S.H. asked him to stop, J.O. kept having sex with her until he ejaculated.

{¶ 23} Based on this evidence, the trial court found that J.O. was delinquent for raping S.H. Despite one minor inconsistency, S.H.'s testimony provided a sufficient basis for the juvenile court to find the essential elements of the rape proven beyond a reasonable doubt. Moreover, the juvenile court reasonably found S.H.'s version of the events to be credible. On the record before us, we cannot conclude that the juvenile court clearly lost its

way and created a manifest miscarriage of justice.

{¶ 24} J.O's first assignment of error is overruled.

{¶ 25} Because they are interrelated, J.O.'s second and third assignments of error will be discussed together as follows:

{¶ 26} "THE MONTGOMERY COUNTY JUVENILE COURT ERRED WHEN IT CLASSIFIED J.O. AS A TIER III JUVENILE OFFENDER REGISTRANT BECAUSE THE IMPOSITION OF ANY CLASSIFICATION PERIOD THAT EXTENDS BEYOND THE AGE JURISDICTION OF THE JUVENILE COURT VIOLATES A YOUTH'S RIGHT TO DUE PROCESS AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT. EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 16."

{¶ 27} "J.O. WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO CHALLENGE THE CONSTITUTIONALITY OF A CLASSIFICATION THAT EXTENDED BEYOND THE JURISDICTION OF THE JUVENILE COURT. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

{¶ 28} In his second assignment, J.O. argues that his classification as a Tier III juvenile sex offender/child victim offender registrant violates his right to due process of law and the constitutional prohibition against cruel and unusual punishment. In his third assignment, J.O. contends that his counsel was ineffective for failing to object to the trial court's decision to classify him as a Tier III juvenile sex offender because the designation

would extend past his attainment of twenty-one years of age and therefore, outside the age jurisdiction of the juvenile court.

{¶ 29} Initially, we note that J.O. failed to object to the constitutionality of his classification as a Tier III juvenile sex offender/child victim offender registrant at his dispositional hearing. The State argues that J.O. waived appellate review of this issue because he did not raise it in the juvenile court.

{¶ 30} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, "[t]he waiver doctrine * * * is discretionary." *In re M.D.*, 38 Ohio St. 3d 149, 527 N.E.2d 286 (1988), syllabus. Even in a case of clear waiver, an appellate court may "consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*; *see In re J.F.*, 178 Ohio App.3d 702, 2008-Ohio-4325, 900 N.E.2d 204, ¶ 84 (2d Dist.) (saying that "parties may raise plain error on appeal, even where objections were not filed in juvenile court"). Courts will consider unraised issues when doing so "best serve[s]" "the interests of justice." *In re A.R.R.*, 4th Dist. Ross No. 09CA3105, 2009-Ohio-7067, ¶ 4.

{¶ 31} J.O. contends that his right to due process of law, as well as the constitutional prohibition against cruel and unusual punishment, has been violated because his classification as a Tier III juvenile sex offender imposes punitive sanctions upon him that will extend past his twenty-first birthday, which is outside the age jurisdiction of the juvenile court.

{¶ 32} R.C. 2152.82(B)(1) states as follows:

(1) The judge shall include in the order a statement that, upon completion of the disposition of the delinquent child that was made for the sexually oriented offense or child-victim oriented offense upon which the order is based, a hearing will be conducted, and the order and *any determinations included in the order are subject to modification or termination* pursuant to sections 2152.84 and 2152.85 of the Revised Code.

{¶ 33} Moreover, R.C. 2152.82(C) states in pertinent part:

(C) *** [A]n order issued under division (A) of the section and any determinations included in the order *shall remain in effect for the period of time specified in section 2950.07 of the Revised Code*, subject to a modification or termination of the order under section 2152.84 or 2152.85 of the Revised Code, and section 2152.851 of the Revised Code applies regarding the order and the determinations. *If an order is issued under division (A) of this section, the child's attainment of eighteen or twenty-one years of age does not affect or terminate the order, and the order remains in effect for the period of time described in this division.*

{¶ 34} R.C. 2152.82 acts to continue the jurisdiction of the juvenile court to classify juveniles beyond their twenty-first birthday. *In re C.A.,* 2d Dist. Montgomery No. 23022, 2009-Ohio-3303. The legislature retains the power to define the jurisdiction of the courts as long as powers inherently reserved for the judiciary are not infringed upon. *Seventh Urban, Inc. v. University Circle*, 67 Ohio St.2d 19, 423 N.E.2d 1070 (1981). Laws limiting rights, other than fundamental rights, are constitutional with respect to substantive due

process and equal protection if the laws are rationally related to a legitimate goal of government. *State v. Thompkins*, 75 Ohio St.3d 558, 664 N.E.2d 926 (1996).

{¶ 35} J.O. argues that punishment is not one of the statutory purposes or goals of R.C. Chapter 2950, but this does not mean that sex offender registration requirements may not be imposed. The Ohio Supreme Court has said that "[p]unishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation." *In re Caldwell*, 76 Ohio St.3d 156, 157, 666 N.E.2d 1367 (1996). Placing a juvenile in a secure facility for several years is undoubtedly punishment. But courts may order juvenile detention to achieve the goals of public protection and juvenile rehabilitation. Similarly, while imposing R.C. Chapter 2950's registration and notification requirements may be punishment, doing so may help achieve these same goals. *In re I.A.*, 2d Dist Montgomery No. 25078, 2012-Ohio-4973, ¶ 5.

{¶ 36} In the instant case, the classification authorized by R.C. 2152.82 as applied to J.O. is not violative of his right to due process nor does its application result in cruel and unusual punishment. There is no per se prohibition against Ohio juvenile courts imposing a registration requirement that extends beyond a person's attainment of age twenty one. *State ex rel. N.A. v. Cross*, 125 Ohio St.3d 6, 2010-Ohio-1471, 925 N.E.2d 614. We note that J.O. does not point to any procedural safeguards that are undermined by a juvenile's classification as a sex offender, the requirements of which continue after attainment of the age of twenty-one. "Indeed, the fact that juvenile courts may review previous sex offender classifications and dispense with them indicates that juvenile sex offenders receive greater due process protection than adult sex offenders. See R.C. 2152.84(A)(2)(b) and R.C.

2152.85(A)." *In re N.Z.*, 11th Dist. Lake No. 2012-L-100, 2014-Ohio-157, ¶¶ 38-45.  In the instant case, while J.O.'s designation as a Tier III sex offender was mandatory pursuant to R.C. 2152.82(C), the juvenile court informed him at the dipositional hearing that his designation could be modified or terminated altogether depending the progress he made while at DYS.  Accordingly, the juvenile court decision to designate J.O. a Tier III juvenile sex offender did not violate his constitutional right to due process and to be free from cruel and unusual punishment.  Pursuant to R.C. 2152.82(C), the juvenile court had the jurisdiction to designate J.O. as a Tier III juvenile sex offender even though that designation could potentially extend past his attainment of twenty-one years of age.[2]

{¶ 37} Lastly, J.O. argues that his counsel's failure to challenge the constitutionality of the juvenile court's designation of him as a Tier III juvenile sex offender amounted to ineffective assistance of counsel. However, the juvenile court was required by the explicit language in R.C. 2152.82 to designate J.O. a Tier III juvenile sex offender because he had already been previously adjudicated delinquent for rape in Case No. JC 2012-5789.  Moreover, we have concluded that J.O.'s constitutional rights were not violated by his designation as a Tier III juvenile sex offender.  J.O. is, therefore, unable to

---

[2]We note that in *In re Raheem L.*, the First District Court of Appeals held that due process, under both the federal and Ohio Constitutions, did not prohibit the legislature from punishing children for delinquency beyond their twenty-first birthdays by classifying them as juvenile sex offender registrants under R.C. 2152.83(A) because no fundamental right was implicated, and the punishment was rationally related to the government's legitimate interest in enforcing its criminal laws against juveniles. *Id.*, 2013-Ohio-2423, 993 N.E.2d 455, ¶ 12 (1st Dist.); discretionary appeal not allowed, 136 Ohio St.3d 1560, 2013-Ohio-4861, 996 N.E.2d 987.

establish that he was prejudiced by his counsel's failure to challenge the constitutionality of his designation. Accordingly, J.O. is unable to demonstrate that he received ineffective assistance of counsel.

{¶ 38} J.O.'s second and third assignments of error are overruled.

{¶ 39} All of J.O's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Kirsten A. Brandt
Brooke M. Burns
Hon. Nick Kuntz